OPINION
{¶ 1} Defendant-Appellant, Gerald Keeton, appeals the judgment of the Union County Court of Common Pleas convicting him of felonious assault. On appeal, Keeton contends that the jury's verdict was against the manifest weight of the evidence and that he received ineffective assistance of counsel. Based upon the following, we affirm the judgment of the trial court.
 {¶ 2} In September 2007, the Union County grand jury indicted Keeton on one count of felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree. The indictment arose from an incident during which Keeton struck a man in the face with a beer bottle, injuring him. Thereafter, Keeton entered a plea of not guilty.
 {¶ 3} In December 2007, the case proceeded to jury trial during which the following testimony was heard.
 {¶ 4} Kenny Jones, the victim, testified that, in the early morning of August 26, 2007, his stepdaughter, Trisha Welch, called and told his wife, Sherry Jones, that Keeton was harassing her at the Back Alley Tavern in Richwood; that he and Sherry drove to the Back Alley Tavern, intending to pick Trisha up; that he was wearing pajama pants and no shirt; that they pulled up to the tavern and he exited the vehicle to retrieve Trisha when he heard someone yell "kill the son of a bitch" and "if you don't, I'll beat your ass when you get home" (trial tr., p. 40); *Page 3 
that he turned around to see who was yelling when something struck his cheek and knocked his glasses from his face; that he staggered and Keeton punched him in the face several times; that he believes it was a beer bottle that initially struck him in the cheek; that he got up and started looking for his glasses, but only found pieces of them; that his wife, Sherry, and Wendy Graham were standing by the car during the incident; that he and Sherry returned home together and Trisha returned home with Wendy; that the police came to his house shortly thereafter and he told them what happened; that he went to a medical facility later that morning to get x-rays taken of his face; that his injury was "pretty painful"; that he still experiences pain and has difficulty eating; that his treatment required surgical placement of a rod through his face; that he missed two weeks of work; and, that he took prescription pain medication for over a month.
 {¶ 5} Kenny testified on cross-examination that he never approached or confronted Keeton; that no one "broke up" the altercation; that he did not call the police after the altercation ended because he is "not that kind of person" and he did not have his "senses together yet" (trial tr., p. 51); that he probably did not tell the officer that came to his house about the beer bottle; and, that he is not certain that he was struck with a beer bottle, but believes that he was because he saw an object in Keeton's hand. *Page 4 
 {¶ 6} Sherry testified that, on August 26, 2007, Trisha called to tell her that she was being harassed and threatened by Keeton; that she and Kenny went to the tavern to pick Trisha up; that Kenny was wearing sleeping pants, tennis shoes, and no shirt; that, when they arrived at the tavern and got out of the car, Keeton "started screaming and hollering at [Kenny]" (trial tr., p. 64); that Kenny turned away from Keeton; that she saw Keeton swing something at Kenny and hit him in the side of the head; that she did not see what Keeton had in his hand, but thought that it was a beer bottle because she saw him before the incident with a beer bottle in his hand; that someone sprayed her with pepper spray; that Kenny and Keeton were "swinging" at each other, but that Kenny was "swinging" to defend himself; that Kenny did not "go after" Keeton; that no other party was involved in the physical altercation; that they looked for Kenny's glasses, but only found broken pieces; that she and Kenny left in their car and went home; that the police arrived about twenty minutes later; and, that, when they woke up later that morning, Kenny's face was black and they went to the emergency room.
 {¶ 7} Sherry testified on cross-examination that Trisha did not ask her to bring Kenny along to the tavern to "deal with" Keeton, but that he went with her because he did not want her to go alone; that, when she was speaking with Trisha on the phone and when they pulled up to the tavern, she heard Keeton threatening *Page 5 
her and their family; and, that she and Kenny did not talk about calling the police after they returned home.
 {¶ 8} Trisha testified that, on August 26, 2007, she was at the Back Alley Tavern; that she and her cousin, Courtney Nibert, who is Keeton's girlfriend, were arguing when Keeton threatened to "whip" her and her family; that she called Sherry to come to the tavern and pick her up; that she noticed that Keeton and Kenny were verbally arguing and that Keeton had a Budweiser beer bottle in his hand; that Keeton swung the beer bottle at Kenny and struck him in the face, which was the first blow of the altercation; that, after the altercation ended, they tried to find Kenny's glasses, but did not find them that night; and, that she did not leave the tavern with Kenny and Sherry, but with her friend, Wendy Graham, because her parents were in a hurry to get home because of their injuries.
 {¶ 9} On cross-examination, Trisha testified that she never stated to anyone, including Shelby McClency, that she called Kenny and Sherry because she wanted Kenny to come to the tavern to "fight" Keeton; and, that she saw Keeton approach Kenny first.
 {¶ 10} Wendy, Trisha's friend, testified that she did not see the altercation begin, but saw Keeton take the last swing at Kenny; that she observed Keeton in the tavern prior to the altercation, drinking a bottle of Bud Lite beer; and, that Sherry and Kenny were looking for his glasses, but did not find them that night. *Page 6 
 {¶ 11} Nicole Green, a bystander, testified that, on August 26, 2007, she spoke to Trisha at the Back Alley Tavern and Trisha did not mention a conflict between her and Keeton; that she observed Keeton drinking a bottle of beer outside of the tavern; that she saw Sherry and Kenny arrive at the tavern; that she saw Kenny trying to get Trisha into the car; that she heard Keeton say "come on * * * [l]et's just finish this" and saw Keeton's sister, Geraldine Keeton, jump on Kenny's back while screaming "kill the S O B or if you don't, I'm going to kick your ass when we get home" (trial tr., p. 111); that she then saw Keeton strike Kenny in the face with a bottle, which was the first blow of the altercation; that the altercation ended and Keeton ran home; and, that Shelby McClency was at the tavern that night.
 {¶ 12} On cross-examination, Nicole testified that she drank approximately three beers prior to the altercation and that no one broke up the fight.
 {¶ 13} Officer Gene Colins of the Richwood Police Department testified that, on August 26, 2007, he responded to an incident at the Back Alley Tavern; that Keeton initiated the call and he responded to Keeton's residence; that Keeton and Courtney were both at the residence and were "very intoxicated" and "outraged" (trial tr., p. 122); that Keeton informed him that he was in a confrontation with Kenny and that Kenny had swung at him, but he did not swing back; that, after speaking to Keeton, he went to Kenny's residence and saw that his *Page 7 
face had a red notch and his glasses were broken and sitting on a night stand; that Sherry's eye was red and looked as if it had been pepper-sprayed; and, that he then returned to Keeton's residence and asked Keeton about the red spot on Kenny's face, to which Keeton replied that he may have fallen, and repeated that he did not hit Kenny.
 {¶ 14} On cross-examination, Officer Colins continued that Kenny did not report the incident later that morning; that he spoke with multiple witnesses at the Back Alley Tavern; that a few of the witnesses told him that Kenny was the aggressor and had "jumped on" Keeton; that, when he spoke to Trisha that morning, she was slightly intoxicated; that, when he initially spoke with Kenny, Kenny stated that Keeton had struck him, but did not mention a beer bottle; that Kenny later gave him a written statement, which included the beer bottle detail; and, that he did not receive any statements or have any contact with Shelby McClency.
 {¶ 15} Dr. Fred Lees testified that he is a Marysville physician; that, on August 30, 2007, he examined Kenny and found multiple fractures to his cheekbone; that Kenny told him that the injury occurred when he went to pick up his daughter at a tavern and was struck in the face with a bottle; and, that the injury was consistent with being hit by a blunt object such as a beer bottle, but could have been something else such as a fist. *Page 8 
 {¶ 16} Travis Clifton, a bystander, testified that, on August 26, 2007, he was at the Back Alley Tavern; that Trisha and Courtney were arguing; that he was standing on the back porch with Geraldine when he saw a car pull up; that Kenny jumped out of the car and he "seen [sic] him throw like a sucker punch while he was coming up on Mr. Keeton" (trial tr., p. 140); that Keeton defended himself by punching Kenny three or four times in the face; and, that he is certain that Kenny threw the first punch.
 {¶ 17} On cross-examination, Clifton testified that he has been dating Geraldine for several months and was dating her at the time of the altercation; that Geraldine did not yell anything at anyone that night; and, that Kenny was dressed in a denim shirt, blue jeans, and a red baseball cap during the altercation.
 {¶ 18} Jerod Deahl, a bystander, testified that, on August 26, 2007, he observed Keeton and Kenny fighting outside of the Back Alley Tavern; that he saw Keeton throw a punch and then both proceeded to throw punches at each other; that he broke up the fight by grabbing Keeton; that he did not see who threw the first punch; and, that he did not see Geraldine on the night of the incident.
 {¶ 19} Jerod testified on cross-examination that he has known Keeton for fourteen years; that he has a criminal history; and, that he wrote a statement for the prosecutor which stated that "when I walked outside, I seen [sic] [Keeton] arguing *Page 9 
with another male. Then I saw [Keeton] take the first swing at the other guy. Then they both preceded [sic] to fighting." (Trial Tr., p. 156).
 {¶ 20} Additionally, the State entered into evidence the victim/witness supplement completed by Jerod which stated, among other things, that he did not see a beer bottle during the altercation and that he has known Keeton for fourteen years, but "just knows of him" and does not consider him to be a friend.
 {¶ 21} Geraldine, Keeton's sister, testified that, on August 26, 2007, she was at the Back Alley Tavern when Kenny "ran up", told Keeton to "look out", and struck Keeton in the back of the head with his fist; that Keeton turned around and defended himself; that Keeton struck Kenny once or twice in self defense; that, when Keeton was striking Kenny, he did not have a beer bottle in his hand; that Keeton never threatened anyone; that she never yelled anything while the altercation was occurring or sprayed anyone with pepper spray; and, that Keeton called 9-1-1 right after the altercation ended as they were walking away from the tavern.
 {¶ 22} On cross-examination, Geraldine testified that Keeton was not drinking beer outside when the altercation occurred and that he does not drink Budweiser, but drinks Bud Lite.
 {¶ 23} Keeton testified that, on August 26, 2007, he was at the Back Alley Tavern; that Courtney and Trisha were arguing, so he told Trisha to "get the hell *Page 10 
out of here" (trial tr., p. 191); that Trisha told him that she was going to call Kenny; that Kenny and Sherry pulled up in their car; that Kenny came running towards him and "blew" him in the back of the head; that they both began hitting each other; that Jerod broke up the fight by grabbing him; that, when Kenny hit him, he did not have a beer bottle in his hand; that he only struck Kenny with his hand; and, that he called the police right as he was walking away from the incident because Kenny had attacked him.
 {¶ 24} On cross-examination, Keeton testified that he had consumed alcohol prior to going to the tavern and was "pretty intoxicated" (trial tr., p. 206); that Geraldine never yelled at him; that Jerod has been a good friend of his for years; that he doesn't believe Kenny's injury is consistent with a beer bottle as Dr. Lees testified, but believes from watching boxing that it was a "boxer fracture" (trial tr., p. 201); that, during the altercation, Kenny was wearing a shirt and blue jeans and was not wearing pajama bottoms; that he does not recall telling Officer Colins that Kenny had swung at him, but that he did not fight back; and, that he was convicted for assaulting someone with a beer bottle in 1998.
 {¶ 25} Thereafter, the jury found Keeton guilty of felonious assault as charged in the indictment and the trial court ordered him to serve a five-year prison term and to pay Kenny $5,735.12 in restitution. It is from this judgment that Keeton appeals, presenting the following assignments of error for our review. *Page 11 
 Assignment of Error No. I THE JURY'S VERDICT ON THE FELONIOUS ASSAULT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SHOULD BE REVERSED.
 Assignment of Error No. II APPELLANT'S ATTORNEY FAILED TO SEEK A CONTINUANCE OR PRESERVE IMPORTANT TESTIMONY THROUGH A PROFFER, RESULTING IN INEFFECTIVE ASSISTANCE OF COUNSEL.
 Assignment of Error No. I {¶ 26} In his first assignment of error, Keeton contends that the jury's verdict convicting him of felonious assault was against the manifest weight of the evidence. Additionally, although not specifically stated in the assignment of error, Keeton contends that there was insufficient evidence for the jury to convict him of felonious assault. Specifically, Keeton argues that the State's theory of the case does not make sense; that the evidence shows that Trisha did not call Kenny and Sherry for a ride home because she did not leave with them; that the State's witnesses contradicted each other about when Trisha left the tavern, whether Kenny found his glasses that night, whether Trisha was concerned about Keeton, and whether Geraldine jumped on Kenny's back; and, that the evidence shows that Keeton was the victim because he was the first to call the police. *Page 12 
 {¶ 27} Initially, we will address Keeton's sufficiency of the evidence argument. Although this argument should have been addressed in a separate assignment of error, we elect to address it in the interest of justice.
 {¶ 28} When an appellate court reviews a record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Monroe, 105 Ohio St.3d 384, 392, 2005-Ohio-2282, citingState v. Jenks (1981), 61 Ohio St.3d 259, superseded by state constitutional amendment on other grounds as stated in State v.Smith, 80 Ohio St.3d 89, 1997-Ohio-355. Sufficiency is a test of adequacy, State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52, and the question of whether evidence is sufficient to sustain a verdict is one of law. State v. Robinson (1955), 162 Ohio St. 486, superseded by state constitutional amendment on other grounds as stated inSmith, supra.
 {¶ 29} Keeton was convicted of felonious assault under R.C. 2903.11(A)(1), which provides, in pertinent part:
 (A) No person shall knowingly do * * * the following: (1) Cause serious physical harm to another[.] * * *
Additionally, "serious physical harm" is defined as:
 (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment; *Page 13 
 (b) Any physical harm that carries a substantial risk of death;
 (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.
R.C. 2901.01(A)(5). Finally, R.C. 2901.22(B) provides that:
 A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.
 {¶ 30} Here, testimony was presented at trial that Keeton initiated a physical altercation with Kenny by striking him in the face with a beer bottle and that Kenny required hospitalization, surgery, and prescription pain medication for treatment of his injuries. In light of these facts, we conclude that a rational trier of fact could have found that the essential elements of felonious assault were proven beyond a reasonable doubt. Accordingly, we must continue to Keeton's manifest weight of the evidence argument.
 {¶ 31} When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the fact finder clearly *Page 14 
lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins,78 Ohio St.3d at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. Id.
 {¶ 32} Here, Keeton contends that the State's witnesses contradicted each other and that the State's theory of the case was illogical. However, the issues of when Trisha left the tavern and with whom, when Kenny found his glasses, and whether anyone jumped on Kenny's back are largely irrelevant to the issue of whether Keeton assaulted Kenny. These facts may reflect on the credibility of the witnesses, but it is well-established that "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." State v. Awan (1986), 22 Ohio St.3d 120, 123, referencing Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77 andHenkle v. Salem Mfg. Co. (1883), 39 Ohio St. 547.
 {¶ 33} Further, testimony existed that Keeton initiated the physical altercation by striking Kenny in the face with a beer bottle; that Keeton was very intoxicated during the altercation; that Kenny sustained multiple cheekbone fractures which were consistent with blunt force from an object such as a beer bottle; and, that Keeton had previously been convicted for assaulting someone *Page 15 
with a beer bottle. Further, we note that the only witnesses testifying that Kenny initiated the physical altercation were Keeton himself, Keeton's sister, Geraldine, Keeton's friend of fourteen years, Jerod, and Geraldine's boyfriend, Travis. Finally, Jerod's own statement given to prosecutors contradicted his trial testimony about who initiated the physical altercation and Keeton's testimony that he and Jerod were good friends for years contradicted Jerod's testimony that he and Keeton were not even friends — reflecting poorly on his credibility. In light of this testimony, we cannot find that Keeton's conviction for felonious assault was against the manifest weight of the evidence.
 {¶ 34} Accordingly, we overrule Keeton's first assignment of error.
 Assignment of Error No. II {¶ 35} In his second assignment of error, Keeton contends that trial counsel was ineffective because he failed to seek a continuance or preserve important testimony through a proffer. Specifically, Keeton claims that a potential witness, Shelby McClency, was subpoenaed to trial, which was returned as unserved, and that there is no further indication that counsel attempted further service. Keeton claims that Shelby's testimony was potentially material to his case, as her testimony may have substantiated Keeton's claim that Kenny started the fight.
 {¶ 36} An ineffective assistance of counsel claim requires proof that trial counsel's performance fell below objective standards of reasonable representation *Page 16 
and that the defendant was prejudiced as a result. State v. Bradley
(1989), 42 Ohio St.3d 136, at paragraph two of the syllabus. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, but for counsel's errors, the outcome at trial would have been different. Id. at paragraph three of the syllabus. "Reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. State v. Waddy (1992), 63 Ohio St.3d 424, 433, superseded by constitutional amendment on other grounds as recognized bySmith, 80 Ohio St.3d at 103.
 {¶ 37} Furthermore, the court must look to the totality of the circumstances and not isolated instances of an allegedly deficient performance. State v. Malone (1989), 2d Dist. No. 10564, 1989 WL 150798. "Ineffective assistance does not exist merely because counsel failed `to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it.'" Id., quoting Smith v. Murray (1986), 477 U.S. 527.
 {¶ 38} Here, Keeton contends that Shelby may have testified that Trisha stated that she wanted Kenny to come to the tavern for the purpose of fighting with Keeton. However, nothing in the record substantiates this assertion. In fact, testimony was heard that Trisha never made this statement to anyone and that Shelby never had any contact with or provided any statement to Officer Colins. *Page 17 
As there is no evidence in the record as to what Shelby may have testified, Keeton has failed to demonstrate that he has been prejudiced because he has not shown a reasonable probability that, had she testified, the outcome at trial would have been different. See State v.Saxton (2002), 3d Dist. No. 9-2000-88, 2002 WL 359469; State v.Peck, 2d Dist. No. 21354, 2006-Ohio-5796. Further, because Keeton's argument fails for this reason, we need not determine whether trial counsel's performance fell below objective standards of reasonable representation.
 {¶ 39} Accordingly, we overrule Keeton's second assignment of error.
 {¶ 40} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 SHAW, P.J., and PRESTON, J., concur. *Page 1