OPINION
{¶ 1} Defendant-Appellant, Steven A. Billock, appeals the judgment of the Wyandot County Court of Common Pleas convicting him of failure to give notice of change of address and sentencing him to a one-year prison term. On appeal, Billock contends that his conviction was not supported by sufficient evidence and was against the weight of the evidence, and that he received ineffective assistance of counsel. Based upon the following, we affirm the judgment of the trial court.
 {¶ 2} In April 2007, the Wyandot County Grand Jury indicted Billock on one count of failure to give notice of change of address in violation of R.C. 2950.05(A), (E)(1) and 2950.99(A)(1)(a)(i), a felony of the third degree. The indictment arose when Billock, a designated habitual sex offender pursuant to R.C. 2950, failed to notify the Wyandot County Sheriff of his change of address in violation of his duty to register. Thereafter, Billock entered a plea of not guilty.
 {¶ 3} In November 2008, the case proceeded to a jury trial during which the following testimony was heard.
 {¶ 4} Thomas Myers testified that he is the landlord of an apartment complex at 200 Orchard Drive in Upper Sandusky ("Orchard Drive address") and that he rented an apartment to Billock from June 2006 until October 15, 2006, when Billock moved out. *Page 3 
 {¶ 5} Sergeant Dwight Kramer of the Wyandot County Sheriffs Office testified that he assists with sex offender registration and typically works the evening shift; that the electronic sex offender registration network is referred to as "ESORN"; that, at the Wyandot County Sheriff's Office, only he and Deputy Brandon Kromer are authorized to change ESORN records; that, approximately once per month, the sheriffs office prints out a list of sex offender registrants in the county and posts the list in a glass case in the lobby of the sheriffs station; and, that they do not keep copies of the outdated lists.
 {¶ 6} Sergeant Kramer continued that, during the period between October 2006 and April 2007, Billock did not change his registered address; that, in April 2007, Deputy Kromer changed Billock's address to Seneca County; that the last time he assisted Billock with registration was in June 2006 when he registered the Orchard Drive address; and, that he examined the duty calendar and he was not working the evening of September 29, 2006, so it would have been impossible for him to have logged in Billock's registration information on this date.
 {¶ 7} William Lathum, investigator for the Wyandot County Prosecutor's Office, testified that he began working with the sheriff's office around March 20, 2007, regarding Billock's alleged failure to register as a sex offender; that, as part of the investigation, he went to the Orchard Drive address and discovered that Billock no longer lived there; that Billock's father, Dennis Cooper, informed him *Page 4 
that Billock had married and was living in Seneca County; that he obtained a copy of Billock's marriage license reflecting that he was married in November 2006 and was living on County Highway 119 in Upper Sandusky; and, that, on April 3, 2007, he received several phone calls from Billock stating that his father had informed him that Investigator Lathum was looking for him and stating that he had an appointment to meet with Deputy Kromer that afternoon.
 {¶ 8} Deputy Brandon T. Kromer of the Wyandot County Sheriffs Office testified that he runs the ESORN program at the sheriff's office and that Sergeant Kramer assists him; that sex offenders have a duty to register their addresses with the sheriffs office; and, that an offender must be personally present at the sheriffs office to change his address.
 {¶ 9} Deputy Kromer continued that Billock was required to register in Wyandot County in October 2006; that Billock did not contact him or Sergeant Kramer in October 2006; that, in March 2007, he received a tip that Billock was no longer living at the Orchard Drive address; that he went to the Orchard Drive address and learned that Billock had moved out in late September or early October 2006; that, on April 3, 2007, Billock came to the sheriffs office and he asked Billock why he had not contacted the sheriffs office to change his address; that Billock informed him that he left the Orchard Drive address in October 2006 and moved to Upper Sandusky until February 2007 when he moved briefly to Tiffin *Page 5 
before settling in Bettsville; that Billock told him that he did not contact the sheriffs office because he had no phone and no transportation and because he was married, his wife was pregnant, and there were "communication stresses"; that Billock told him that he attempted to contact the Wyandot County Sheriff's Office several times to change his address and also contacted the Seneca County Sheriff's Office; that Billock wrote out a statement at his request stating that he was "fairly certain" that he spoke with Sergeant Kramer around October 15, 2006, regarding changing his address from the Orchard Drive address to the County Highway 119 address; and, that, on April 3, 2007, he transferred Billock to Seneca County's system.
 {¶ 10} Deputy Kromer further testified that, several days after transferring Billock to the Seneca County system, Lieutenant Derr of the Seneca County Sheriffs department contacted Deputy Kromer and informed him that he was having problems receiving Billock's information; that, after April 3, he learned that there were technical problems with ESORN from Lieutenant Derr who informed him that Seneca County was unable to access Billock's information or make the change of address; that ESORN occasionally has technical problems when it goes "off-line" and they cannot access the system; that, when this occurs, the offender must come back later because offenders are required to register in person; that he has no record of Billock coming into the office in September or *Page 6 
October 2006; that he does not keep track of voicemail messages he receives or phone calls; and, that he cannot recall receiving any voicemail from Billock.
 {¶ 11} Thereafter, Billock made a Rule 29 motion for acquittal on the basis that the State had not presented sufficient evidence, which the trial court denied. Billock then proceeded to present evidence.
 {¶ 12} Sharon Sue Amesquita, Billock's mother, testified that he lived at her residence at 15470 County Highway 119 in Upper Sandusky ("County Highway address") from November 2006 until mid-February 2007; that she took him to the sheriffs office to change his address, but that someone at the office informed him that the officer with whom he needed to speak was unavailable; that Billock attempted to call the sheriffs office from her house several times; that she was at the sheriffs office in March 2007 and noticed Billock's name and the County Highway address on a list posted in the lobby; and, that, after leaving the County Highway address, Billock moved to Tiffin and then to a residence in Bettsville.
 {¶ 13} Dennis Wayne Cooper, Billock's father, testified that Investigator Lathum spoke to him in April 2007 and he informed him that Billock had moved to Bettsville with his wife and that Billock had attempted to contact the sheriff's office several times; that the officer Billock usually attempted to contact worked the evening shift; that he has no knowledge whether Billock ever physically went *Page 7 
to the sheriff's office to register; and, that he was at the sheriff's office in early March 2007 and saw Billock's name and the County Highway address on a list posted in the lobby.
 {¶ 14} Billock testified that he has been registering as a sex offender since 1997; that he is required to register annually or upon change of address or employment; that he completed his annual registration in July 2006 with Deputy Kromer and received a copy of the printout; that, in September 2006, he received a notice in the mail requiring him to come back to the sheriff's office; that he returned to the sheriffs office in late September to complete an employment change and an address change he anticipated in October; that he contacted Sergeant Kramer and went through the registration process on September 29, 2006; and, that Sergeant Kramer had difficulty logging onto the website, but eventually gained access and told him he "would take care of [the change]." (Trial Tr., pp. 203-204).
 {¶ 15} Billock continued that he moved to the County Highway address in mid-October 2006 and stayed there until February; that, after leaving in February, he moved frequently and he did not contact the Wyandot County Sheriff's Office because he was still using the County Highway address as a "hub"; that he called the Seneca County Sheriff's Office prior to signing his lease in Bettsville to make sure the address complied with applicable sex offender restrictions; that, in March *Page 8 
2007, he went to the Seneca County Sheriffs Office and they informed him that they could not change his address because his name was not on a list of offenders to be transferred; that he repeatedly contacted the Wyandot County Sheriffs Office but received no response or was unable to travel there when the ESORN officers were available; that Deputy Kromer eventually successfully transferred him to Seneca County, but when he went to Seneca County to change his address, he was twice informed that the system was not working before finally succeeding in changing the address; that he notified both the Wyandot and Seneca County Sheriffs' Offices about his change of residence from the County Highway address to the Bettsville residence; and, that calling the sheriffs office alone does not fulfill his duties to register as a sex offender.
 {¶ 16} Carol Smith testified that she is one of five dispatchers for the Wyandot County Sheriffs Office; that every dispatcher keeps a log of individuals coming into and leaving the office and a log of all incoming phone calls; that the station does not have caller ID; that she examined the logs from July 2006 until April 3, 2007, and did not observe that Billock called in during that time period except for two calls on April 3; that her log shows that Billock came to the office on April 3 to see Deputy Kromer; and, that there are no other entries in the log showing that Billock called or came into the office. *Page 9 
 {¶ 17} Additionally, the trial court, Billock's counsel, and the State discussed a letter ("dear citizen letter"), which was admitted into the record but not presented to the jury by agreement of trial counsel and the State. The anonymous letter was addressed generally to all citizens and criticized the ESORN system, stating that there had been "procedural errors and the willful destruction of evidence in a Grand Jury Case pending in the Wyandot County Court of Common Pleas." The letter contained no reference to Billock or any other specific case.
 {¶ 18} Subsequently, the jury convicted Billock of failing to give notice of change in address.
 {¶ 19} In February 2008, the trial court sentenced Billock to a one-year prison term. It is from this judgment that Billock appeals, presenting the following assignments of error for our review.
 Assignment of Error No. I THE DEFENDANT'S CONVICTION WAS NEITHER SUPPORTED BY THE SUFFICIENCY NOR MANIFEST WEIGHT OF THE EVIDENCE.
 Assignment of Error No. II THE COUNSEL FOR THE DEFENDANT PROVIDED INEFFECT [SIC] ASSISTANCE OF COUNSEL.
 Assignment of Error No. I {¶ 20} In his first assignment of error, Billock contends that his conviction was not supported by sufficient evidence and was against the manifest weight of *Page 10 
the evidence. Specifically, Billock argues that he was indicted for failing to register his change in residence twenty days prior to changing his address; that the State failed to prove that Billock was required to register twenty days prior; that the State failed to prove that Billock was required to provide written notice of his change of address; that there was undisputed evidence that the Sheriff had notice of the County Highway address because his parents testified that it was posted in the sheriffs office lobby; that there was a reasonable explanation as to why there was no log of his phone calls to the sheriffs office; and, that the dear citizen letter was not properly presented to the jury. We disagree.
 {¶ 21} Initially, we will address Billock's sufficiency of the evidence argument.
 {¶ 22} When an appellate court reviews a record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Monroe, 105 Ohio St.3d 384, 392, 2005-Ohio-2282, citingState v. Jenks (1981), 61 Ohio St.3d 259, superseded by state constitutional amendment on other grounds as stated in State v.Smith, 80 Ohio St.3d 89, 1997-Ohio-355. Sufficiency is a test of adequacy, State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52, and the question of whether evidence is sufficient to sustain a verdict is one of law. State v. Robinson *Page 11 
(1955), 162 Ohio St. 486, superseded by state constitutional amendment on other grounds as stated in Smith, supra.
 {¶ 23} The jury convicted Billock of failing to give notice of a change in address in violation of R.C. 2950.05(A), which provides, in pertinent part:
 If an offender * * * is required to register * * *, the offender * * * shall provide notice of any change of residence * * * to the sheriff with whom the offender * * * most recently registered the address[.] * * * The offender * * * registrant shall provide the written notice at least twenty days prior to changing the address of the residence[.] * * * They shall provide the written notices during the period they are required to register.
 {¶ 24} Here, testimony was presented at trial that Billock was required to register as a sex offender in Wyandot County in October 2006; that, in October 2006, Billock moved from the registered Orchard Drive address to another address; that Billock's marriage license from November 2006 lists the County Highway address; that, from October 2006 through April 3, 2007, Billock did not change his address from Orchard Drive to County Highway; that Billock did not contact either police officer handling the ESORN system in Wyandot County from October 2006 until April 3, 2007; and, that calling the sheriff's office alone does not fulfill a sex offender's duty to register.
 {¶ 25} In light of these facts, we conclude that a rational trier of fact could have found that the essential elements of failure to give notice of a change of *Page 12 
address were proven beyond a reasonable doubt. Accordingly, we must continue to Billock's manifest weight of the evidence argument.
 {¶ 26} When an appellate court analyzes a conviction under the manifest weight standard, it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. Id.
 {¶ 27} In support of his manifest weight argument, Billock argues that his parents' testimony that the County Highway address was listed in the sheriff's office lobby demonstrates that the sheriff had notice of his address; that, because he had no home phone, he would have no reason to leave a voicemail or message at the sheriff's office; and, that, had the jury seen the dear citizen letter, the verdict clearly would have been different.
 {¶ 28} However, evidence was presented that, from October 2006 until April 3, 2007, Billock did not give notice of his change his address from Orchard Drive in Wyandot County; that office logs from July 2006 until April 3, 2007, do *Page 13 
not reflect that Billock ever personally came into the Wyandot County Sheriff's Office; and, that mere telephone contact with the sheriffs office does not satisfy registration requirements. Although Billock and his parents claimed that he did contact the sheriffs office and did change his address from Orchard Drive, it is clear that the jury found the police officers' and dispatcher's testimony to be more credible. Based on our review of the record, we cannot say that the jury clearly lost its way.
 {¶ 29} As to the dear citizen letter, we note that both the State and Billock agreed to seal the letter and not present it to the jury. Further, aside from a conclusory assertion, Billock has presented no evidence that, had the dear citizen letter been presented to the jury, the verdict would have been different.
 {¶ 30} Thus, we find that Billock's conviction was not against the manifest weight of the evidence.
 {¶ 31} Accordingly, we overrule Billock's first assignment of error.
 Assignment of Error No. II {¶ 32} In his second assignment of error, Billock contends that he received ineffective assistance of counsel. Specifically, Billock complains that trial counsel was ineffective because he failed to call potential witnesses; failed to adequately review and investigate the sheriffs office phone logs and computer records; failed to demand copies of all correspondence from the sheriffs office to Billock; failed *Page 14 
to investigate the claims in the dear citizen letter or move for judgment notwithstanding the verdict; and, failed to object to jury instructions. We disagree.
 {¶ 33} An ineffective assistance of counsel claim requires proof that trial counsel's performance fell below objective standards of reasonable representation and that the defendant was prejudiced as a result.State v. Bradley (1989), 42 Ohio St.3d 136, at paragraph two of the syllabus. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, but for counsel's errors, the outcome at trial would have been different. Id. at paragraph three of the syllabus. "Reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. State v. Waddy (1992),63 Ohio St.3d 424, 433, superseded by constitutional amendment on other grounds as recognized by Smith, 80 Ohio St.3d at 103.
 {¶ 34} Furthermore, the court must look to the totality of the circumstances and not isolated instances of an allegedly deficient performance. State v. Malone (1989), 2d Dist. No. 10564, 1989 WL 150798. "Ineffective assistance does not exist merely because counsel failed `to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it.'" Id., quoting Smith v. Murray (1986), 477 U.S. 527. *Page 15 
 {¶ 35} Here, Billock contends that trial counsel should have called Lieutenant Derr and Officer Paul, with whom Billock made contact in Seneca County, because they may have testified that there were glitches in ESORN. However, there is no evidence in the record as to what Lieutenant Derr or Officer Paul may have testified. Additionally, testimony was heard from Deputy Kromer that ESORN had occasional problems. Accordingly, Billock has failed to demonstrate that he has been prejudiced because he has not shown a reasonable probability that, had they testified, the outcome at trial would have been different. SeeState v. Keeton, 3d Dist. No. 14-07-48, 2008-Ohio-2613, citing State v.Saxton (2002), 3d Dist. No. 9-2000-88, 2002 WL 359469.
 {¶ 36} Next, Billock contends that trial counsel failed to adequately review and investigate the sheriffs office phone logs and computer records in order to identify "no name" calls that came in during the times Billock claimed he called. However, it is well established that "`[a]ttorneys need not pursue every conceivable avenue; they are entitled to be selective.'" State v. Murphy (2001), 91 Ohio St.3d 516,542, quoting United States v. Davenport (C.A.7, 1993), 986 F.2d 1047,1049. Further, Billock has presented no evidence that trial counsel did not review and investigate the phone logs or even that identifying the no name phone calls as Billock's would have been feasible. In fact, testimony was heard that Billock had no home telephone. Additionally, testimony was heard that calling the *Page 16 
sheriff's office, without more, would not satisfy the sex-offender registration requirements. Accordingly, Billock has failed to demonstrate that, had trial counsel examined the phone logs and computer records, the outcome at trial would have been different.
 {¶ 37} Next, Billock argues that trial counsel was ineffective for failing to request the September 2006 notice allegedly sent from the sheriff's office to Billock. However, Billock has presented no evidence except for his own self-serving testimony that such a notice exists. Further, Billock testified that the notice merely requested that he return to the sheriffs office. We fail to see how this notice, if requested and entered into evidence, would have affected the outcome of Billock's trial.
 {¶ 38} Additionally, Billock contends that trial counsel was ineffective for failing to investigate claims in the dear citizen letter or move for a judgment notwithstanding the verdict due to the letter. However, we find that trial counsel's failure to investigate claims in an anonymous letter that did not specifically concern Billock did not render his performance deficient — particularly given that attorneys are not expected to pursue every plausible avenue. See Murphy, supra. Further, in light of the letter's anonymity and questionable credibility, we decline to find that trial counsel was ineffective for failing to move for a judgment notwithstanding the verdict on the basis of the letter. *Page 17 
 {¶ 39} Finally, Billock contends that trial counsel was ineffective for failing to object to jury instructions because the State never presented evidence that Billock was required to provide written notice of his change of address. However, Billock, a designated habitual sex offender pursuant to R.C. 2950, admitted that he was required to register as a sex offender and R.C. 2950.05(A) plainly states that an offender must provide written notice prior to changing his address during the period he is required to register. Therefore, Billock's final contention is without merit.
 {¶ 40} Accordingly, we overrule Billock's second assignment of error.
 {¶ 41} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 SHAW, P.J. and WILLAMOWSKI, J., concur. *Page 1